# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 43

APRIL TERM, A.D. 2016

*April 12, 2016*

IN THE MATTER OF THE
TERMINATION OF PARENTAL
RIGHTS TO HLL and KGS, Minor
Children:

CLB,

Appellant
(Respondent),

v.                                                          S-15-0211

STATE OF WYOMING,
DEPARTMENT OF FAMILY
SERVICES,

Appellee
(Petitioner).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
Ariel C. Calmes, Harris Law Office, P.C., Evanston, Wyoming

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; David S. Robinson, Assistant Attorney General. Argument by Mr. Robinson.

*Guardians ad Litem:*
Office of the State Public Defender: Dan S. Wilde, Deputy State Public Defender; Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian *ad Litem* Program, Cheyenne, Wyoming

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]    Appellant Mother challenges a district court decision terminating parental rights to two of her minor children pursuant to Wyo. Stat. Ann. §§ 14-2-309(a)(iv) and (v) (LexisNexis 2015).  She presents a myriad of arguments, ranging from a challenge to subject matter jurisdiction to a claim that the evidence was insufficient to support the termination.  We affirm.

## ISSUES

[¶2]    Mother presents the following issues, which we have refined and reordered somewhat:

>    1.    Did the district court have jurisdiction over the termination proceedings?

>    2.    Does W.R.C.P. 55, governing default, apply in parental termination proceedings?

>    3.    If so, did the district court abuse its discretion by denying Mother's request to set aside an entry of default?

>    4.    Did the district court correctly conclude that the Department presented clear and convincing evidence to support the termination of Mother's parental rights to two of her children?

## FACTS

[¶3]    Mother has had six children, but currently has custody of none of them.  Her first child died at fourteen months from blunt force trauma to the head.  Mother was convicted of third degree felony child abuse for her role in that tragedy.  Mother's rights to her second child were either relinquished or terminated, so far as we can tell from the record.  Rights to her third and fourth children were terminated by default.  Mother's rights to the remaining two children, HLL and KGS, are the subject of this appeal.

[¶4]    HLL was born in 2001 and KGS arrived a few years later in 2003.  By all accounts, these children have had a very tough life.  In 2007, Wyoming's Department of Family Services (Department) became aware of the children when Mother moved with them to Wyoming from Utah.  The Utah Department of Child and Family Services had an open case with Mother, and as a result it contacted the Department and asked that it follow up with the family and offer Mother and the children services.  Mother opted not to accept the services offered by the Department, and that case was closed.

1

[¶5]     A year later, in 2008, the Department received a report from law enforcement that Mother had physically abused both children.  In an attempt to hide the injuries she had inflicted on them, she kept them out of school and barricaded them in the basement of their house for a week.  After uncovering the situation, law enforcement exercised protective custody and took the children to the emergency room for immediate medical treatment.

[¶6]     A petition to begin child protection proceedings was filed, and temporary custody was transferred to the Department pursuant to Wyo. Stat. Ann. § 14-3-208.  The juvenile court[1] adjudicated that Mother had abused and neglected the children.  Criminal charges were also brought, and Mother was again convicted of felony child abuse.  Nevertheless, the children were reunified with Mother in the summer of 2009, with the juvenile case remaining open under Department supervision for an additional year.

[¶7]     Over the next four years, Mother continued to have run-ins with law enforcement and the Department.  She was arrested for aggravated assault in 2011.  HLL and KGS witnessed the assault, after which Mother took the children and hid with them from law enforcement until she was eventually arrested.  She then left HLL and KGS with a friend while she was sent to substance abuse treatment.  The Department opened a case and offered services to the children and the friend taking care of them.  Mother was apparently reunited with the children after this crisis passed.

[¶8]     On January 29, 2013, Mother became intoxicated and committed a felony aggravated assault and battery on a girlfriend.  She beat the woman with a baseball bat, causing significant injuries.  HLL and KGS were in the home during the beating, which occurred just outside.  Afterwards, Mother told the children to help cover blood in the snow and to clean blood off the baseball bat.  She then directed HLL to hide the bat and fabricated a story for the children to tell in order to create a false alibi if anyone asked what had happened.

[¶9]     The next day, on January 30, Mother was arrested for the battery, and the children were left with a friend.  The day after that, January 31, law enforcement officers conducted a welfare check at the friend's home.  The officers found the children without adult supervision and learned that KGS was caring for her sister and the friend's children as well.  There was no food in the home; the friend was limited in food stamps and could not provide for HLL and KGS.  The officers took HLL and KGS into protective custody that same day.

---

[1] In Wyoming, district judges also sit as juvenile court judges.  *See KC v. State*, 2015 WY 73, ¶ 26 n.3, 351 P.3d 236, 244 n.3 (Wyo. 2015).

[¶10]  On February 1, 2013, the county attorney's office filed a petition in juvenile court alleging that Mother had abused and neglected HLL and KGS.  The court held a shelter care hearing the same day, after which it placed both children in the legal custody of the Department.  HLL and KGS have remained in the Department's custody since that time.  Mother subsequently admitted to the allegations that she neglected them.

[¶11]  On May 29, 2013, Mother was convicted of assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(ii) and (b) for the baseball bat attack, for which she received a sentence of three to six years in prison.  She was incarcerated at the Wyoming Women's Center in Lusk, Wyoming at the time of briefing and argument in this case.[2]

[¶12]  This case began when the Department filed a *Petition for Termination of Parental Rights* (petition) against Mother on October 23, 2014.  It alleged two grounds for termination pursuant to Wyo. Stat. Ann. §§ 14-2-309(a)(iv) and (v).  Mother was personally served with the petition at the Women's Center on November 5, 2014.  However, she failed to timely answer, plead, or otherwise defend.

[¶13]  On December 8, 2014, the clerk of court entered default against Mother.  The district court then set the matter for a default hearing on March 19, 2015.  On February 17, 2015, Mother filed a document which the parties have treated as a motion to set aside the default, and she also requested that the court appoint her counsel.  The motion was heard on March 19, the date set for the default hearing.  Mother attended telephonically without an attorney.  The district court heard from Mother regarding her reasons for failing to answer, which it did not find convincing.  Accordingly, it determined that Mother failed to present a *prima facie* case of good cause to set aside the default, and it denied her request for that relief.  Nevertheless, it appointed Mother an attorney for the default hearing on termination of her parental rights, and reset that hearing to May 8, 2015 to allow counsel time to prepare.

[¶14]  At the hearing on May 8, the Department presented testimony and evidence intended to establish clearly and convincingly that Mother's parental rights to HLL and KSG should be terminated.  The district court permitted Mother's appointed attorney to give an opening statement, cross-examine the Department's witnesses, make objections, and deliver a closing argument.  The court found that clear and convincing evidence established that Mother's parental rights to HLL and KGS should be terminated under Wyo. Stat. Ann. §§ 14-2-309(a)(iv) and (v).  It entered an order to that effect shortly thereafter, and Mother timely perfected this appeal.

---

[2] We do not know whether she is still incarcerated or has been released on parole due to good time allowances at the time this opinion is released to publication.

**DISCUSSION**

*Subject Matter Jurisdiction*

[¶15]  Before this Court can reach the merits of the matter, we must first determine whether the district court had subject matter jurisdiction.  Mother argues that it did not.  In support of her theory, she speculates that the Department did not follow its own rules and procedures when it took the children into shelter care in the child protection case.[3]  Based upon that supposition, she claims that there was no subject matter jurisdiction, and that therefore the district court did not have authority to decide the Department's separate termination action.

[¶16]  Whether subject matter jurisdiction exists is a question of law that we review *de novo*.  *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014).  "If the district court lacked subject matter jurisdiction, this Court has jurisdiction on appeal, not on the merits, but only as to the jurisdictional issue."  *Id.*  "The absence of subject matter jurisdiction makes dismissal, rather than affirmance, the proper course." *Id.*

[¶17]  This Court recently reiterated that a district court's "subject matter jurisdiction is invoked with the filing of a complaint stating a case belonging to a general class over which the authority of the court extends." *Id.* at ¶ 46, 331 P.3d at 1187.  Long ago, we explained in greater detail:

> Jurisdiction in the case lies dormant, of course, until called into exercise. It must be invoked in some manner. An action must be commenced, a pleading, complaint or information of some sort must be filed, in order that a court may be said to have jurisdiction; that is to say, power to proceed and do anything in a particular cause; it is only then that the case may be said to be *coram judice.*

*State v. Kusel*, 29 Wyo. 287, 295-96, 213 P. 367, 368-69 (Wyo. 1923); *Brown v. City of Casper*, 2011 WY 35, ¶ 13, 248 P.3d 1136, 1140 (Wyo. 2011).

---

[3] Mother thinks that one of the children's fathers could possibly have taken the girls at this early stage of the proceedings.  Whether that was a realistic possibility at the time is unclear, as the record does not support the claim.  Regardless, the district court's subject matter jurisdiction in a termination action is separate from the issue of the children's shelter care placement.  A shelter care hearing is a proceeding before the juvenile court, and it is the juvenile court who considers the appropriateness of placing a child in shelter care. *See* Wyo. Stat. Ann. §§ 14-3-407 through 409 (LexisNexis 2015).  We also note that the record does not reflect any effort by either of the fathers to take custody of the children.

[¶18] In this case, the petition filed by the Department invoked the district court's subject matter jurisdiction. The petition correctly states that the case involves the termination of parental rights and that it therefore belongs to a general class to which the authority of the district court extends. Under Wyoming Constitution Article 5, § 10, the district court has original jurisdiction over proceedings to terminate parental rights. The Termination of Parental Rights Act also provides that termination proceedings must be heard in the district court. Wyo. Stat. Ann. § 14-2-308(a)(iv). As to the parties permitted to file a termination action, the Department is an agency authorized to file the petition. Wyo. Stat. Ann. § 14-2-310; *In re LB*, 2014 WY 10, ¶ 12, 316 P.3d 1184, 1187 (Wyo. 2014).

[¶19] Mother's claim that the Department did not follow its own rules and procedures in placing the children in shelter care is irrelevant to our jurisdictional analysis.[4] The district court had subject matter jurisdiction over the proceeding once the petition for termination of parental rights against Mother was filed. Accordingly, we have appellate jurisdiction to consider the substantive issues she has raised.

### *Default Rule in Termination of Parental Rights Proceedings*

[¶20] Mother argues that the district court erred as a matter of law in denying her motion to set aside the entry of default. She says that W.R.C.P. 55, the rule governing entry of default and default judgment, does not apply in a termination of parental rights proceeding because it is more like a criminal case than a civil one. Our study of controlling statutes and case law confirms otherwise.

[¶21] This issue requires us to interpret Wyoming's parental termination statutes and rules of civil procedure. The interpretation of both involves questions of law to be reviewed *de novo*. *In re ARW*, 2015 WY 25, ¶ 11, 343 P.3d 407, 410 (Wyo. 2015) ("Statutory interpretation raises questions of law, which we review *de novo*."); *In re Gen. Adjudication of All Rights to Use Water in Big Horn River Sys.*, 2015 WY 104, ¶ 16, 355 P.3d 1222, 1226 (Wyo. 2015) ("Interpretation of procedural rules is a question of law this Court reviews *de novo*.").

[¶22] The plain language of the parental termination statutes make clear that the Wyoming Rules of Civil Procedure apply to termination proceedings:

> After the petition has been filed, the court shall appoint
> a guardian ad litem to represent the child unless the court
> finds the interests of the child will be represented adequately

---

[4] Appellant refers us to *MB v. Laramie Cty. Dep't of Family Servs.*, 933 P.2d 1126, 1127 (Wyo. 1997). However, although this Court did in fact reverse an order terminating parental rights because the Department failed to follow its own rules, the case was decided on the merits, and not on a lack of subject matter jurisdiction.

by the petitioner or another party to the action and are not adverse to that party. If the court appoints a guardian ad litem it shall approve a fee for services. When a petition is filed and presented to the judge, the judge shall set the petition for hearing. The Wyoming Rules of Civil Procedure, including the right of a parent, child or interested person to demand a jury trial, are applicable in actions brought under this act.

Wyo. Stat. Ann. § 14-2-312 (LexisNexis 2015). The legislature's directive is clear and unambiguous.

[¶23] Our case law is also clear. This Court has on several occasions held that termination proceedings are civil in nature. *Matter of Adoption of JLP*, 774 P.2d 624, 628 (Wyo. 1989) ("[T]ermination proceedings are civil in nature."); *Matter of GP*, 679 P.2d 976, 985 (Wyo. 1984) ("The appellant has not been charged with a crime in this case and its outcome may not include criminal sanctions or punishment against the appellant. We are here involved with a civil matter—namely, the termination of parental rights and this litigation may not be interpreted as a 'criminal case' . . . ."). We recently reaffirmed that at "the termination-of-parental-rights (TPR) hearing, a full gamut of procedural rights and processes come into play: the Wyoming Rules of Civil Procedure, including the right to a jury trial, and the Wyoming Rules of Evidence apply." *KC v. State*, 2015 WY 73, ¶ 27, 351 P.3d 236, 244 (Wyo. 2015).

[¶24] There is no doubt that a termination of parental rights proceeding is a civil matter and that the Wyoming Rules of Civil Procedure apply. Accordingly, our analysis must now shift to determine how W.R.C.P. 55 operates in conjunction with the parental rights termination statutes.

[¶25] In a general civil case, W.R.C.P. 55 provides a procedure to enter judgment against a party without consideration of the merits when there is a competent showing that the offending party failed to plead or defend the case. Rule 55(a) sets forth the first step[5] to default a party. It states that "[w]hen a party against whom a judgment for

---

[5] "Entry of default is a clerical act performed by the clerk of court and is not a judgment. W.R.C.P. 55(a)." *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 9, 45 P.3d 647, 651 (Wyo. 2002). "The entry of default forecloses the defaulting party from making any further defense or assertion with respect to liability or any asserted claim." *Id.* A secondary source further explains:

> Courts distinguish a judgment by default from the mere entry of default. The entry of a default does not constitute a judgment but is rather an order precluding the defaulting party from making any further defense in the case as far as his or her liability is concerned. The default entry is simply an interlocutory order that in itself determines no rights or

6

affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." W.R.C.P. 55(a). This rule does not conflict with the required procedures under the statutes governing the termination of parental rights. Thus, with the appropriate notice, default can be entered against a non-appearing parent. *See, e.g., In re ZMETS*, 2012 WY 68, ¶¶ 7, 10, 276 P.3d 392, 394-95 (Wyo. 2012); *In re ARW,* ¶ 1, 343 P.3d at 408.

[¶26] With respect to the second step in obtaining a judgment by default, W.R.C.P. 55(b)(1) and (2) provide the procedure. In a case involving a sum certain, or a sum that can by computation be made certain, the clerk can enter judgment without a hearing by the court. W.R.C.P. 55(b)(1). In all other cases, the court can enter a judgment by default, and if

> it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

W.R.C.P. 55(b)(2). Thus, depending on the type of civil case before it, the court has discretion to hold an evidentiary hearing, and in some circumstances it may even have to hold a jury trial if the applicable statute so requires.

[¶27] The rule governing default judgments and the termination statutes superficially seem somewhat out of tune with each other. Unlike general civil matters, where the judge has discretion to hold a hearing before entering judgment by default, "[w]hen a petition is filed and presented to the judge, the judge shall set the petition for hearing." Wyo. Stat. Ann. § 14-2-312. Furthermore, unlike cases in which no proof is required before a judgment by default can be entered against a non-appearing or defending party, in a proceeding in which the Department is petitioning to terminate parental rights, the court can only proceed to disposition on the default when the Department establishes the

---

> remedies, whereas the default judgment is a final judgment that terminates the litigation and decides the dispute.
>
> An entry of default and an entry of default judgment are two separate events or steps. The first step is the entry of default when it is shown, by affidavit or otherwise, that a defending party on a claim has failed to plead or otherwise defend. The second step is the entry of default judgment.

46 Am. Jur. 2d *Judgments* § 233 (2d ed. 2016). *See also* 10A Wright and Miller, *Federal Practice and Procedure (Civil)* § 2684 (3d ed. 2015).

requisite factors for termination set out in § 14-2-309 by clear and convincing evidence. *See In re ZMETS*, ¶¶ 10-16, 276 P.3d at 395-96; *cf. Blair v. Supreme Court of State of Wyo.*, 671 F.2d 389, 391 (10th Cir. 1982).

[¶28] Our reading of the termination statutes confirms that this procedure is required regardless of whether the parent does or does not appear at the hearing.[6] These statutory requirements that our courts and the Department are obligated to follow satisfy the Due Process Clause requirements that safeguard a parent's fundamental liberty interest in maintaining a relationship with his or her child. *ZMETS*, ¶¶ 15-16, 276 P.3d at 396; *In re FM*, 2007 WY 128, ¶ 9, 163 P.3d 844, 847 (Wyo. 2007).

[¶29] In sum, we reaffirm that the Wyoming Rules of Civil Procedure do apply to proceedings for termination of parental rights. Thus, an entry of default can be entered by the clerk against the delinquent parent pursuant to W.R.C.P. 55(a). However, a default judgment that terminates the rights of the parent cannot be entered by the district court without (1) holding the required hearing and (2) the Department presenting clear and convincing evidence of the grounds to terminate the parental rights, all in accordance with §§ 14-2-308 *et seq*. If the court finds that a statutory basis for termination has been established by clear and convincing evidence, it can then terminate the parent-child legal relationship.

### District Court's Refusal to Set Aside the Entry of Default

[¶30] Over two months after the clerk entered default against her, Mother filed what can charitably be described as a motion to set aside the entry of default. That is how the parties and the district court treated it, and no one involved in this appeal argues that it should not have been so considered. In the motion, Mother briefly explained that she was not seeking to excuse her negligence in not timely answering the petition, but indicated that "the situation at the time of receiving [the] documents was of particularly high stress."[7]

[¶31] As we have already noted, after the district court held a hearing on Mother's motion to set aside the entry of default, it denied the motion. It applied the required

---

[6] If the defaulting parent does appear at the termination hearing, the district court has broad discretion in determining the extent to which the parent can participate. For example, in *ZMETS,* the parent was not permitted to present evidence, but was allowed to cross-examine the Department's witness, object to the entry of evidence, and present opening and closing statements. *In re ZMETS*, ¶ 7, 276 P.3d at 394. *ZMETS* did not, however, set a limit on the extent of participation a defaulting parent could properly be permitted in the exercise of judicial discretion. In the instant case, Mother does not directly challenge the district court's ruling in this regard, and so we must leave this issue for another case in which it is raised and fully briefed by the parties.

[7] Mother subsequently filed a handwritten letter to the district court responding to the Department's opposition and reiterating her prior statement of being under stress when she received the petition.

three-part test to determine whether good cause existed to set aside the entry of default, concluding that Mother had not met her burden. It found that (1) the Department would be prejudiced by delaying permanency for the minor children in the Department's custody, (2) Mother had not asserted a meritorious defense to the claims in the petition, and (3) she failed to present any evidence of the high stress she alleged in her motion, and her culpable conduct led to the default being entered against her. Thus, it held Mother "failed to provide a prima facie case of 'good cause' to set aside the default."

[¶32] On appeal, Mother claims that the district court was wrong in denying her motion to set aside the entry of default. A district court's determination as to whether good cause exists to set aside an entry of default lies within its sound discretion. *In re ARW*, ¶ 17, 343 P.3d at 412. We will not disturb that decision unless the district court abused its discretion and was clearly wrong. *Id.*; *see also RDG Oil & Gas, LLC v. Jayne Morton Living Trust*, 2014 WY 102, ¶ 10, 331 P.3d 1199, 1201 (Wyo. 2014).

[¶33] Judicial discretion is made up of many things, including conclusions drawn from objective criteria. It means exercising sound judgment as to what is right under the circumstances, and not acting arbitrarily or capriciously. *Multiple Resort Ownership Plan, Inc.*, ¶ 10, 45 P.3d at 651. As the proponent of the motion, Mother had the burden of proving that she is entitled to relief. *In re ARW*, ¶ 17, 343 P.3d at 412.

[¶34] W.R.C.P. 55(c) governs setting aside a default. It states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." W.R.C.P. 55(c). As we have explained, "[g]ood cause for setting aside an entry of default, pursuant to [W.R.C.P.] 55(c), is to be found in the justifications for relief from a final judgment articulated in [W.R.C.P] 60(b)." *Fluor Daniel (NPOSR), Inc. v. Seward*, 956 P.2d 1131, 1134 (Wyo. 1998). Put another way, if the defaulting party cannot prove reasons for setting aside the entry of default under W.R.C.P. 60(b), then it necessarily follows that good cause under W.R.C.P. 55(c) cannot be established.[8] *In re ARW*, ¶ 18, 343 P.3d at 412 ("We have previously held that the factors described in Rule 60(b) are relevant to our determination of whether the defendant has shown 'good cause.'").

[¶35] W.R.C.P. 60(b) sets forth various grounds for relief, one being excusable neglect, which is pertinent here. We have explained that demonstrating excusable neglect is not a light burden, because that standard is intended to address certain unavoidable crises in life, such as genuine emergencies like death, sickness, or other unfortunate situations in which a reasonably prudent person might have exhibited the same behavior under similar circumstances.[9] *RDG Oil & Gas, LLC*, ¶ 14, 331 P.3d at 1202.

---

[8] In applying these procedural rules, we must not forget that they "are remedial and are intended to promote decisions on the merits when possible." *In re ARW*, ¶ 17, 343 P.3d at 412 (citation omitted).

[9] Undue delay in the mail would also satisfy the definition of excusable neglect. *See RDG Oil & Gas, LLC*, ¶ 14, 331 P.3d at 1202.

9

[¶36]   A three-factor test has been developed for our trial courts to apply in determining whether a default judgment ought to be set aside.  *RDG Oil & Gas, LLC*, ¶ 13, 331 P.3d at 1202.  The three factors are:  "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default."  *Id.*

[¶37]   Having carefully reviewed the record, we are convinced that the district court soundly exercised its discretion in denying Mother's motion to set aside the default.  It correctly consulted the aforementioned three factors before determining that Mother had not established good cause.  First, the Department would indeed be prejudiced if the default was set aside, because the permanent placement of HLL and KGS would be delayed.  Second, the record shows that Mother did not assert any meritorious defense to the allegations in the petition, and could not show that she could provide a safe environment for the children and meet their needs, or that she could even remain clean, sober, and not physically or mentally abusive.  Finally, Mother's culpable conduct clearly led to the default.  It is a classic example of neglect, not excusable neglect.  As she admitted in substance, she negligently failed to timely respond to the petition. Although she claimed to have been under high levels of stress, Mother did not substantiate that claim at the hearing on her motion to lift the default.  Instead, she summed up the situation when telling the judge that "I didn't even really read it [the petition and summons], so I am at fault for that."

[¶38]   The district court did not abuse its discretion in denying Mother's motion, because she failed to show good cause to set aside the entry of default as required under W.R.C.P. 55(c) and 60(b).

*Sufficiency of the Evidence to Support Termination*

[¶39]   Lastly, Mother claims that the Department did not present sufficient evidence to clearly and convincingly support termination of her parental rights to HLL and KGS. Our standard of review on a challenge to the sufficiency of evidence has been explained as follows:

> We apply traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. We examine the evidence in the light most favorable to the party prevailing below, assume all favorable evidence to be true, and disregard conflicting evidence presented by the unsuccessful party. Because the right to associate with one's family is fundamental, however, we strictly scrutinize petitions to terminate parental rights. As part of our strict scrutiny standard, we require that a case for

10

termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.

*In re ARW*, ¶ 21, 343 P.3d at 413 (citations omitted).

[¶40] The Department petitioned to terminate Mother's rights based upon two alternative grounds pursuant to Wyo. Stat. Ann. §§ 14-2-309(a)(iv) and (v). After being presented with the Department's evidence at the hearing, the district court found that clear and convincing evidence supported the termination of Mother's parental rights to HLL and KSG under both subsections (iv) and (v). The statute provides in pertinent part:

> (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
>
> .    .    .
>
> (iv) The parent is incarcerated due to the conviction of a felony and a showing that the parent is unfit to have the custody and control of the child;
>
> (v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]

Wyo. Stat. Ann. § 14-2-309(a)(iv), (v).

[¶41] With regard to subsection (iv), the record confirms that the Department presented clear and convincing evidence that Mother is incarcerated on a felony conviction. She was at the time of the hearing serving a three to six year sentence at the Wyoming Women's Center for aggravated assault and battery based on beating a girlfriend with a baseball bat. *See supra*, ¶¶ 8-9. At the termination hearing, the district court took judicial notice of Mother's criminal cases, without objection.[10]

---

[10] The district court also took judicial notice of the juvenile proceeding. The court files in the criminal and juvenile cases were not made a part of the record in this appeal, and no one attempted to supplement that record. Mother argues that the absence of these files renders the evidence insufficient, and that the Department should have seen that they were included. This proposition flies in the face of our rule that a party seeking review of a district court decision must designate an adequate record for review. *Walker v. Walker*, 2013 WY 132, ¶ 26, 311 P.2d 170, 176 (Wyo. 2013); *Roberts v. Locke*, 2013 WY 73, ¶ 27, 304 P.3d 116, 122 (Wyo. 2013); *Golden v. Guion*, 2013 WY 45, ¶¶ 4-5, 299 P.3d 95, 96-97 (Wyo. 2013);

11

[¶42] Additionally, we find more than sufficient evidence in the record to support the conclusion that Mother is unfit to have custody and control of HLL and KRS. "Unfit" is not statutorily defined, but this Court has explained:

> Fitness includes the ability to meet the ongoing physical, mental and emotional needs of the child. Whether a parent is fit to have custody and control of a child is a decision that must be made within the context of a particular case and depends upon the situation and attributes of the specific parent and child.

*In re ARW*, ¶ 22, 343 P.3d at 413-14 (quoting *In re KMJ*, 2010 WY 142, ¶ 15, 242 P.3d 968, 971 (Wyo. 2010)). A parent's fitness is measured at the time of the termination proceedings, but that does not mean a district court ought to turn a blind eye to evidence of a parent's previous unfitness. *Id.*

[¶43] While the fact that Mother was incarcerated at the time of the district court's decision is not of itself sufficient to establish unfitness, it was an unavoidable reality that greatly impacted the parent-child relationship and simply cannot be ignored. *In re ARW,* ¶ 23, 343 P.3d at 414. At the end of the day, Mother's capability to meet the two children's ongoing physical, mental, and emotional needs is and may continue to be severely restricted during the period of her incarceration. And the reason for Mother's incarceration, *see supra* ¶¶ 8-9, is also evidence that she is unfit to care for these two children. The brutal beating of another woman and suborning the children to assist in the cover-up shows tremendous violent and depraved tendencies, and indicates that she is unfit to care for the children. Beyond that, she has previously been convicted of abusing these children and contributing to the death of her firstborn child.

[¶44] Additionally, other evidence confirms that Mother was unable to provide a clean or safe home environment for the children. The home shared by Mother, HLL, and KRS was soiled, in disarray, and had sex toys and pornography strewn about. Mother also has an extensive history of alcohol and drug abuse, including use of methamphetamine and barbiturates. She has time and again exhibited violent conduct towards the children and towards others in the presence of the children. *See supra* ¶¶ 3-11. All of this evidence, in addition to Mother's convictions for aggravated assault and battery, establishes that she is not able to meet the children's ongoing physical, mental, and emotional needs. Importantly, she no longer has the opportunity to physically and emotionally hurt these

---

*Chancler v. Meredith*, 2004 WY 27, ¶ 5, 86 P.3d 841, 842 (Wyo. 2004); *Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo. 1996). In the absence of such a record, we presume that the district court's findings were adequately supported by the record not provided to us for review. *Id*.

children ever again.  The evidence to support termination is not just clear and convincing – it is overwhelming.

[¶45] We therefore conclude that the Department presented clear and convincing evidence establishing (1) Mother's incarceration due to a felony conviction and (2) her unfitness to have custody and control of HLL and KRS.  Accordingly, there was more than sufficient evidence for the district court to terminate Mother's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(iv).  Because we conclude there was sufficient evidence for the termination of Mother's parental rights under subsection (iv), it is unnecessary to address her claim that there was insufficient evidence under subsection (v).

[¶46]  Affirmed.