# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 2

OCTOBER TERM, A.D. 2016

January 11, 2017

IN THE MATTER OF THE TERMINATION OF
PARENTAL RIGHTS TO KGS, a Minor Child:

RGS,

Appellant
(Respondent),

v.

STATE OF WYOMING, DEPARTMENT OF
FAMILY SERVICES,

Appellee
(Petitioner).

S-16-0137

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

**Representing Appellant:**
> *Monica J. Vozakis, Long Reimer Winegar Beppler LLP, Evanston, Wyoming.*

**Representing Appellee:**
> *Peter K. Michael, Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Wendy S. Ross, Senior Assistant Attorney General. Argument by Ms. Ross.*

**Guardian Ad Litem:**
> *Dan S. Wilde, Deputy Director and Aaron S. Hockman, Permanency Attorney, Wyoming Guardian Ad Litem Program.*

**Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, RGS, appeals from the district court's order terminating his parental rights.  He claims there was insufficient evidence to support the district court's decision and that he was denied due process of law.  We affirm.

### ISSUES

[¶2]    Appellant presents the following issues:

1. Did the district court err in terminating Father's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(iii)?

2. Did the district court err in terminating Father's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v)?

3. Were Father's due process rights violated?

### FACTS

[¶3]    Appellant is the father of KGS, born in Utah in 2003.  KGS's mother had additional children with different fathers, including KGS's older sister, HLL, with whom KGS has lived since her birth.  Mother's parental rights to all of her children have previously been terminated.  We affirmed termination of Mother's parental rights to KGS and HLL in *In re HLL*, 2016 WY 43, 372 P.3d 185 (Wyo. 2016).  Parental rights to HLL are not at issue in this appeal.

[¶4]    Appellant and Mother separated in 2004, when KGS was nine months old.  After the separation, Mother moved to Evanston, Wyoming with KGS and HLL.  Upon learning of the move, the Utah Department of Child and Family Services (DCFS) asked Wyoming's Department of Family Services (Department) to follow up with the family and offer services.  Mother declined the Department's offer of services.

[¶5]    From 2004 to 2008, Appellant had regular visitation with KGS in Evanston and, occasionally, at his home in Harrisville, Utah, eighty miles away.  In 2008, law enforcement removed KGS from Mother's care after Mother physically abused her.  Appellant requested that KGS be placed with him.  In response, the Department, pursuant to the Interstate Compact on the Placement of Children (ICPC), requested that the Utah DCFS evaluate the suitability of placement with Appellant.  The Utah DCFS completed its study, and denied placement with Appellant based on his refusal to submit to a drug test and his extensive criminal history.  KGS was placed in foster care.

[¶6]    After the evaluation, Appellant participated in visitation with KGS for a brief time.

1

That visitation ended when KGS reported that she had been sexually abused by Appellant a year earlier. The Department conducted a forensic interview of KGS. KGS told the interviewer that the assault had occurred when she was visiting Appellant in Utah for Christmas. KGS reported that she was in Appellant's bedroom with the door locked and that Appellant "tickled her buttocks with his . . . weenie" and fondled her vaginal area with his hand. She also reported that, during this event, "yellow puke" came out of Appellant's "weenie." The Department sent the report to the Utah DCFS. Utah DCFS made a supported finding in the spring of 2009 that the sexual abuse had occurred as KGS had reported. A "supported finding," according to Utah DCFS Guidelines, exists where there is a "reasonable basis to conclude that abuse, neglect, or dependency occurred." *See* Utah Child Protective Services Practice Guidelines, *available at* http://hspolicy.utah.gov/files/dcfs/DCFS%20Practice%20Guidelines/200-%20Child%20 Protective%20Services.pdf; Utah Code Ann. § 62A-4a-101(33).

[¶7]    The Department reunited KGS with Mother in 2009. The Department determined that it could safely provide supervised visitation between Appellant and KGS in Evanston, but Appellant refused. In 2011, the Department learned that Mother was incarcerated, and that KGS and HLL were staying with Mother's friend. The Department offered to provide services to help take care of the children, but that offer was refused. Appellant did not pursue custody or visitation with KGS at that time.

[¶8]    The Department did not have contact with the children again until 2013, when law enforcement took KGS and HLL into protective custody after an incident in which Mother committed an assault with a baseball bat in front of them. The next day, the Department notified Appellant of the situation. A neglect petition was filed against Mother on February 1, 2013. A copy of the petition was provided to Appellant, and he attended a shelter care hearing held to address placement of the children. In its report to the court, the Department recommended that the children remain in the Department's custody and that they be placed in foster care. Following the hearing, KGS was placed in the Department's legal custody.

[¶9]    Following the shelter care hearing, the Department contacted Appellant to see if he would participate in a second home study pursuant to the ICPC. The Department advised Appellant that the Utah DCFS may not approve placement of KGS with him based on the supported finding of abuse in 2009. Appellant, who was living with his sister and her family at the time, declined to participate in a home study. He also declined the Department's offer to arrange supervised visitation in Evanston.

[¶10]   A multi-disciplinary team (MDT) was created to provide recommendations for the care of the children, and Appellant was appointed as a member of that team. However,

2

he failed to participate in all but one MDT meeting.[1]  At the 12-month MDT meeting, held in February 2014, the team members unanimously recommended that the children be placed with their maternal grandmother in Utah, and that the State move forward with termination of Appellant's parental rights.  Following a hearing to address the permanency plan, the court ordered that the plan be changed from reunification with the parents to termination of Mother's and Appellant's parental rights and adoption of KGS.  Appellant did not attend the permanency hearing.  However, on February 24, 2014, Appellant wrote a letter to the court stating that he was "ok with [KGS] being placed with [her maternal grandmother]."

[¶11]  The MDT met again in August 2014.  Appellant did not attend the meeting.  Following the meeting, the MDT repeated its recommendation that Appellant's parental rights be terminated so that KGS would be eligible for adoption.  A placement review hearing was subsequently held in September 2014.  The court ordered that KGS would remain in the custody of the Department.  Appellant did not attend the review hearing.

[¶12]  On October 23, 2014, the Department filed a petition seeking termination of Mother's and Appellant's parental rights.  On May 8, 2015, Appellant appeared in court and requested court-appointed counsel.  Counsel was appointed for Appellant the same day.

[¶13]  A hearing on the petition to terminate parental rights was held on November 24, 2015.  Following the hearing, the district court entered an order terminating Appellant's parental rights.  This appeal followed.

## DISCUSSION

**Sufficiency of the Evidence**

[¶14]  In his first two issues, Appellant claims the Department presented insufficient evidence to support termination of his parental rights.

> We apply traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. We examine the evidence in the light most favorable to the party prevailing below, assume all favorable evidence to be true, and disregard conflicting evidence presented by the unsuccessful party. Because the right to associate with one's family is fundamental, however, we

---

[1] Appellant attended the January 2014 MDT meeting by phone.

3

strictly scrutinize petitions to terminate parental rights. As part of our strict scrutiny standard, we require that a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.

*In re HLL*, ¶ 39, 372 P.3d at 193.

[¶15] The Department petitioned to terminate Appellant's parental rights under Wyo. Stat. Ann. §§ 14-2-309(a)(iii) and (a)(v) (LexisNexis 2015). The district court found that clear and convincing evidence supported termination of Appellant's parental rights under both subsections. The statute provides as follows:

> **§ 14-2-309. Grounds for termination of parent-child relationship; clear and convincing evidence.**
>
> (a) The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence:
>
> > . . .
> >
> > (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent;
> >
> > . . .
> >
> > (v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]

We will first address subsection (a)(v). Appellant does not dispute that KGS had been in the custody of the Department for fifteen of the most recent twenty-two months. Appellant claims, however, that the evidence was insufficient to establish that he was unfit to have custody and control of KGS.

4

[¶16]  We have previously recognized that parental "fitness" encompasses the ability to meet the ongoing physical, mental, and emotional needs of the child.  We have also made it clear that parental fitness must be determined at the time of the termination trial.  Past behavior is a relevant consideration in making that determination:

> The termination statutes do not define the term "unfit;" however, this Court has determined that "fitness includes the ability to meet the ongoing physical, mental and emotional needs of the child." *R.L.A. v. State, Dep't of Family Servs. (In re L.A.)*, 2009 WY 109, ¶ 14, 215 P.3d 266, 269 (Wyo. 2009). Further:
>
> > It is well-settled that a parent's fitness is to be determined at the time of the termination trial. *AJJ v. State (In re KMJ)*, 2010 WY 142, ¶ 17, 242 P.3d 968, 971 (Wyo. 2010). "That does not mean, however, that the district court must ignore evidence of a parent's previous unfitness." *Id.* This Court recently reiterated that "[i]t is appropriate for a district court to consider a parent's history and pattern of behavior over time in determining whether rights should be terminated." *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 24, 224 P.3d 14, 20 (Wyo. 2010) (citations omitted). Evidence of past behavior is "plainly relevant in determining current parental fitness." *JD v. State (In re AE)*, 2009 WY 78, ¶ 18, 208 P.3d 1323, 1328 (Wyo. 2009).
>
> *PRG v. State, Dep't of Family Servs. (In re KMO)*, 2012 WY 100, ¶ 20, 280 P.3d 1216, [1223] (Wyo. 2012).

*NLT v. State (In re KAT)*, 2012 WY 150, ¶ 18, 288 P.3d 1217, 1222 (Wyo. 2012).  There is sufficient evidence in this record to support the district court's conclusion that Appellant is not fit to have custody and control of KGS.

[¶17]  The trial testimony established that KGS has significant mental health needs.  She suffers from depression, reactive attachment disorder, and oppositional defiant disorder.  She requires continued therapy to address sexual reactive behaviors and suicidal tendencies and will potentially need inpatient, residential treatment.  Appellant lacks the ability to meet those needs and conceded at the hearing that he does not want custody of KGS.  When asked how he would assist KGS with respect to her therapy and recovery, Appellant replied, "Just being there for her. . . .  As far as the fixing goes, I wouldn't know how to do that.  I can only be there for her."  Appellant stated, "I don't know

5

nothing about no head fixing."

[¶18]  Appellant has had very little contact with KGS throughout her life.  He has not lived with KGS since 2004.  His regular visitation ended in 2009 after Utah DCFS made a supported finding that he had sexually abused KGS.  He failed to take advantage of subsequent opportunities to exercise supervised visitation.   Although he has had telephone contact with KGS, he did not see her for a period of two and a half years, from January 2013 to July 2015.   Additionally, the child abuse allegation and subsequent supported finding cannot be ignored.  "There can be nothing that makes a parent more intrinsically unfit than abusing his child."  *CDB v. DJE*, 2005 WY 102, ¶ 7, 118 P.3d 439, 441 (Wyo. 2005).  Appellant did not cooperate with the investigation in 2009, and he did not provide any evidence or testimony at the termination hearing to dispute the supported finding.

[¶19]  Appellant's current living situation is inadequate to allow him to care and provide for KGS properly.  He resides in his sister's home with six other people, and admitted that there would be no room for KGS in their home.  He refused permission for a home study.

[¶20]  Appellant also has an extensive criminal record.  He has been convicted of several felony offenses, including burglary and negligent homicide.  At the time of the Utah home study report in 2008, Appellant had been incarcerated for nearly 20 years of his life.  Utah DCFS refused to place KGS with Appellant because of his criminal history and drug use.  His history of drug use prompted the Utah DCFS to request that he submit to a drug test, but Appellant refused.

[¶21]  Based upon the foregoing, we find that the district court's determination that Appellant is unfit to have custody and control of KGS is supported by clear and convincing evidence.   There was sufficient evidence to support termination of Appellant's parental rights pursuant to Wyo. Stat. Ann. § 14-2-309(a)(v).  In light of that determination, we need not address the claim that there was insufficient evidence to support termination under subsection (a)(iii).  *In re HLL*, ¶ 45, 372 P.3d at 194.

**Due Process**

[¶22]  In his final issue, Appellant contends he was denied due process because he was not properly notified of hearings and multi-disciplinary team meetings "[t]hroughout the 2013 juvenile court proceeding."  According to Appellant, the Department did not send notices to his correct address in Utah.  He asserts that "DFS and the juvenile court failed to give Father proper notice of DFS and court documents."  He claims "[t]hese failures violated Father's due process rights and were prejudicial because the failures resulted in Father not fully participating, which the district court relied on to terminate Father's parental rights."

[¶23]  We find no merit in Appellant's contentions.  Although the notices in the juvenile proceeding may have been incorrectly addressed, Appellant conceded that he received those notices.  Any issues that Appellant had with improper notice should have been raised in those proceedings.  More significantly, Appellant has made no showing that he was denied due process in this case.  The record reflects that he was represented by counsel and participated fully in the termination proceedings.

[¶24]  Affirmed.