BOOMGAARDEN, Justice.
[¶1] Appellant, Chelsea Reed (Mother), appeals the district court's termination of her parental rights to her minor children, AM-LR and TCG. Mother claims she was denied due process of law during the prior neglect proceedings. We affirm.
ISSUE
[¶2] Mother's sole issue on appeal is: "Were Mother's Due Process Rights violated when she was not given Notice of a Permanency Hearing or her Right to request an Evidentiary Hearing?" We state the dispositive issue as: May Mother collaterally attack the juvenile court's permanency order by appealing the district court's termination of parental rights order?
FACTS
[¶3] Mother has two children, AM-LR born in 2011 and TCG born in 2014. Proceedings in this case began in late December 2014, when the state filed a juvenile neglect action against Mother[1] following a second report *553 from the Rawlins Police Department about deplorable and unsafe living conditions in Mother's home.[2] Mother denied the neglect allegations at the shelter care and initial hearing; the juvenile court placed the children in DFS custody for familial foster care placement. Mother later admitted to the neglect allegations at the adjudicatory hearing on March 9, 2015.
[¶4] Following the adjudicatory hearing, the juvenile court appointed a multidisciplinary team (MDT), which recommended reunification as the initial permanency goal. In its October 23, 2015, Order on Review Hearing , the juvenile court found DFS was "making reasonable efforts for a permanency plan of reunification and a concurrent plan of adoption with family."[3]
[¶5] In January 2016, at the first permanency hearing, the juvenile court adopted the MDT's recommendation to give Mother another three months to comply with the case plan and court requirements to regain custody of her children, notwithstanding Mother's lack of effort during the prior year. The MDT advised Mother it would change its recommended permanency goal from reunification with a concurrent goal of adoption, to termination and adoption, if Mother failed to make substantial progress. Mother failed to make the necessary progress and, consequently, at the next MDT meeting in April 2016, the MDT recommended changing the permanency plan to adoption. Mother was notified of, but did not attend, the April 2016 MDT meeting; Mother's attorney did attend the meeting. The juvenile court accepted the new permanency recommendation after hearing from all parties, including Mother and her attorney, during a review hearing on April 18, 2016. Mother did not appeal the juvenile court's April 25, 2016, Order Upon Review Hearing despite the fact it found "efforts to reunify are no longer necessary" and DFS is "making reasonable efforts at the concurrent permanency plan of adoption."
[¶6] Mother also did not appeal the juvenile court's July 21, 2016, order following a permanency hearing on July 18, 2016, which incorporated the MDT's continued recommendation for a permanency goal of termination of parental rights and adoption. DFS filed a civil action in district court to terminate Mother's parental rights on July 25, 2016.
[¶7] The district court held a bench trial on July 12-13, 2017, and entered an order terminating Mother's parental rights to AM-LR and TCG pursuant to Wyo. Stat. Ann. §§ 14-2-309(a)(iii) and (v) (Lexis Nexis 2017), on July 26, 2017. The district court found clear and convincing evidence to support both statutory grounds for termination: 1) the children were neglected, DFS' reasonable efforts to rehabilitate were unsuccessful, and both AM-LR's and TCG's health and safety would be seriously jeopardized if they returned to live with Mother; and, 2) AM-LR and TCG had been in foster care for thirty consecutive months and Mother was unfit to have custody and control of the children. Mother timely appealed from the July 26, 2017, termination order.
DISCUSSION
[¶8] Mother does not challenge the sufficiency of the evidence to terminate her parental rights or raise any issue on appeal relating to the termination proceeding. She instead alleges the juvenile court violated her due process rights in the neglect proceedings by failing to notify her of a change in the nature of the July 18, 2016, hearing, and her right to request an evidentiary hearing.
*554 Mother did not attempt to challenge the neglect proceedings directly. Instead, she is using her appeal of the district court's termination of parental rights order to collaterally attack the juvenile court's July 21, 2016, Order Upon Permanency Hearing -an order stemming from a separate proceeding in a different court. Whether Mother may collaterally attack the juvenile court's permanency order by appealing the district court's termination of parental rights order is a question of law we review de novo. In re Adoption of SSO , 2017 WY 142, ¶ 8, 406 P.3d 723, 726 (Wyo. 2017) (citing In re Estate & Guardianship of Andrews , 2002 WY 17, ¶ 15, 39 P.3d 1021, 1025-26 (Wyo. 2002) ).
[¶9] We have long recognized "termination proceedings are entirely separate and distinct from neglect proceedings, deriving their respective genesis from separate statutes and requiring different burdens of proof." In re MN v. State , 2003 WY 135, ¶ 37, 78 P.3d 232, 240 (Wyo. 2003). The Child Protection Act governing abuse/neglect proceedings, specifically provides, "[a]ny party including the state may appeal any final order, judgment or decree of the juvenile court to the supreme court within the time and in the manner provided by the Wyoming Rules of Appellate Procedure." Wyo. Stat. Ann. § 14-3-432(a) (Lexis Nexis 2017). The Wyoming Rules of Appellate Procedure provide that an order is appealable if it affects a substantial right and is made in a special proceeding. W.R.A.P. 1.05(b). "Proceedings in juvenile court are special proceedings." DH v. Wyo. Dep't of Family Servs. (In re "H" Children) , 2003 WY 155, ¶ 61, 79 P.3d 997, 1014 (Wyo. 2003). We previously determined a juvenile court order ceasing efforts toward reunification affects a parent's substantial rights and we treated such an order as appealable. AA v. Wyo. Dep't of Family Servs. (In re HP) , 2004 WY 82, ¶ 23, 93 P.3d 982, 989 (Wyo. 2004) ; see also KC v. State (In the Interest of GC) , 2015 WY 73, ¶ 33, 351 P.3d 236, 245 (Wyo. 2015).
[¶10] An order from which an appeal lies constitutes a "judgment" as used in the Wyoming Rules of Civil Procedure. W.R.C.P. 54(a) ; In Interest of NP , 2017 WY 18, 389 P.3d 787, 791 n.1 (Wyo. 2017) (citations omitted) (explaining that the Rules of Civil Procedure are applicable to abuse and neglect cases). Therefore, the juvenile court's July 21, 2016, Order Upon Permanency Hearing was a judgment, the collateral attack of which generally is disallowed. See, e.g ., SSO , ¶ 9, 406 P.3d at 726 ; Moore v. State , 2009 WY 108, ¶ 12, 215 P.3d 271, 274 (Wyo. 2009) ; Osborn v. Painter , 909 P.2d 960, 963-64 (Wyo. 1996) (and authorities cited therein); see also, Interest of K.R.T., 505 S.W.3d 864, 868 (Mo. Ct. App. 2016) (citation omitted) (explaining "[g]enerally, a judgment must be challenged via direct appeal and not by a collateral attack"). If the juvenile court had lacked jurisdiction, its judgment would be void and subject to collateral attack. SSO , ¶ 9, 406 P.3d at 726-27 ; Moore , ¶ 12, 215 P.3d at 274 ; 50 C.J.S. Judgments § 724 ; 43 C.J.S. Infants § 170 ; see also, K.R.T. , 505 S.W.3d at 868 (citation omitted) (explaining that "if a judgment was made without subject-matter jurisdiction or personal jurisdiction, the judgment would be void so that a collateral attack would be permissible"). However, Mother does not challenge the juvenile court's jurisdiction in the neglect proceedings in which she admitted the allegations brought against her. Consequently, Mother's remedy, if she had one, was in juvenile court. Mother failed to appeal the Order Upon Permanency Hearing and cannot collaterally attack that order here under the guise of appealing the district court's order terminating Mother's parental rights.
[¶11] Our decisions in In re KGS v. State , 2017 WY 2, ¶¶ 22-23, 386 P.3d 1144, 1148 (Wyo. 2017) and MN , ¶ 37, 78 P.3d at 240, squarely support this conclusion. In KGS , we found no merit in father's contentions he was denied due process because he was not properly notified of, and therefore did not participate in, all juvenile neglect proceedings, circumstances he believed the district court relied on in terminating his parental rights. KGS , ¶¶ 22-23, 386 P.3d at 1148. We concluded any issues father had with the juvenile proceedings "should have been raised in those proceedings," and noted father conceded he received the juvenile court notices and, "more significantly," failed to show he was denied due process in the termination *555 proceedings. Id. As in the present case, the record in KGS reflected that the complaining parent was represented by counsel and participated fully in the termination proceedings. Id . at ¶ 23, 386 P.3d at 1148.
[¶12] In MN , we held that any error in failing to appoint mother counsel at the initial juvenile proceedings hearing was harmless in the context of the termination proceedings due to the separate nature of, and burden of proof required for, juvenile neglect and termination of parental rights proceedings. MN , ¶ 37, 78 P.3d at 240. We emphasized that "a neglect action is not a mandatory prerequisite to termination of parental rights." Id . As in the present case, the mother's admission of neglect in MN "did not relieve the State from proving by clear and convincing evidence that Mother's parental rights should be terminated." Id . Also, similar to both cases, there were no substantial procedural irregularities amounting to a denial of due process. Like the mother in MN , who failed to show how the failure to appoint her counsel within the juvenile proceeding violated her due process rights in the termination proceedings, and who was represented by counsel and afforded all procedural safeguards throughout the termination proceedings, id. , Mother in the present case made no argument and we found nothing in the record to show how any defective notice regarding the nature of the July 2016 juvenile court hearing or Mother's right to request an evidentiary hearing violated her due process rights in the termination hearing. As noted above, Mother's counsel attended the April and July 2016 juvenile court hearings, and Mother attended the July 2016 juvenile court hearings. The record further indicates Mother was represented by counsel, testified, and was afforded all procedural safeguards throughout the course of trial in the termination proceedings.
[¶13] The Order Terminating Parental Rights of Chelsea Nicole Reed is affirmed.

The state filed the neglect petition against Mother and Joshua Golden, the children's father (Father). The Department of Family Services (DFS) petitioned to terminate Mother's and Father's parental rights to AM-LR and TCG in a separate civil action on July 25, 2016. Father failed to answer that petition. The district court entered default against Father and ordered his parental rights terminated on December 22, 2016, and February 9, 2017, respectively. Father's parental rights are not at issue in this appeal.

Police first took protective custody of AM-LR and TCG in October 2014, after a DFS worker and a Rawlins police officer observed animal feces and cigarette butts littering the floors, dirty diapers and weeks old dirty dishes in the home. Mother regained custody a few days later after cleaning up the home.

The record indicates at that time "adoption with family" contemplated adoption by Father's parents in Arkansas. Ultimately, DFS denied any placement with Father's parents and the MDT expected the children's familial foster parents in Cheyenne to adopt both children.