2002 WY 78

**Cleo COOPER, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 01–76.**

Supreme Court of Wyoming.

May 22, 2002.

Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Cleo Cooper pleaded guilty to one count of felony possession of a controlled substance under Wyo. Stat. Ann. § 35-7-1031 (LexisNexis 2001). He appeals his judgment and sentence arguing the trial

court committed error when it allowed a substance abuse therapist to testify during sentencing regarding privileged communications she had with him. We hold that, although Mr. Cooper did not expressly waive his privilege as required by Wyo. Stat. Ann. § 33–38–113 (LexisNexis 2001), he impliedly did so and did not suffer any prejudice. Therefore, we affirm his sentence.

## ISSUES

[¶ 2] Mr. Cooper presents the following issue for our review:

*ISSUE I*

Whether the district court committed reversible error when it violated Wyo. Stat. Ann. § 33–38–113 by compelling Cooper's substance abuse counselor to testify regarding privileged information.

The State of Wyoming phrases the issue as:

Whether the district court abused its discretion when it directed Appellant's substance abuse counselor to answer questions on cross-examination?

## FACTS

[¶ 3] On June 9, 2000, Casper police officers responded to a call which indicated three juveniles were making noise in a residential area. Upon arrival, the officers saw Mr. Cooper outside a residence with another individual. One officer knew Mr. Cooper and requested that an NCIC check be run on him. The NCIC check indicated a warrant had been issued for Mr. Cooper because he failed to appear at a court proceeding. The officer asked Mr. Cooper to put his hands behind his back; however, Mr. Cooper suddenly ran away. He subsequently tripped and fell, and, although he continued to resist, the officers were able to restrain him and place him under arrest. A search of his person revealed a small amount of marijuana and a spoon with cocaine residue.

[¶ 4] Mr. Cooper was initially charged with one count of felony possession of cocaine and one count of felony possession of marijuana, both under § 35–7–1031. Pursuant to a plea agreement, he pleaded guilty to the cocaine charge, and, in exchange, the state dismissed the marijuana charge. The trial court sentenced him to a term of not less than four years nor more than five years in the Wyoming State Penitentiary.

[¶ 5] At his sentencing hearing, Mr. Cooper called a substance abuse therapist to recommend that he be placed into the substance abuse treatment program rather than face imprisonment. The therapist knew Mr. Cooper in 1996 while he was a resident at the substance abuse treatment program where the therapist was employed. On direct examination, the defense, in an open-ended question, asked the therapist to generally explain what took place during Mr. Cooper's initial residency in the treatment program. On cross-examination, the prosecutor asked the therapist to discuss communications she had with Mr. Cooper, specifically whether Mr. Cooper told her he was involved in the sales of controlled substances. The therapist questioned the court as to whether she should answer the question due to her duty of confidentiality. The court replied that she "may answer that question." As a result, the therapist testified Mr. Cooper had in fact said he was involved in the sales of controlled substances. Mr. Cooper's trial counsel lodged no objection; however, on appeal, Mr. Cooper alleges error.

## STANDARD OF REVIEW

[¶ 6] We will not disturb a sentence because of sentencing procedures unless the appellant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Trusky v. State,* 7 P.3d 5, 13 (Wyo.2000). Reversal is warranted only when the error is prejudicial and affects an appellant's substantial rights. *Id.* The appellant bears the burden to establish that an error was prejudicial. *Id.*

## DISCUSSION

[¶ 7] Mr. Cooper called his therapist to convince the court he would benefit from being admitted into the substance abuse treatment program and to explain why he initially failed the same program in 1996. During the therapist's cross-examination, she

hesitated to respond to certain questions and queried the trial court as to whether her responses would violate her duty to safeguard privileged communications.

Q. Okay. And, also, during the time that you have been involved, have you also been—treated other various people, including female clients, who have been involved with Mr. Cooper?

A. Yes, sir, I have.

Q. And haven't numerous of them told you that Mr. Cooper was abusive towards them?

[DEFENSE COUNSEL]: Objection.

Q. (BY [PROSECUTOR]) That he provided drugs to them?

[DEFENSE COUNSEL]: Objection, Your Honor; hearsay.

THE COURT: Overruled. Rules of Evidence don't apply.

[DEFENSE COUNSEL]: Or lack of personal knowledge. I don't know if she would have personal knowledge about—

THE COURT: I'll allow the question.

THE WITNESS: Your Honor, may I break confidentiality?

[PROSECUTOR]: If she is doing so, Your Honor, I believe she may be entitled to.

THE COURT: What's that?

[PROSECUTOR]: If—I mean, she has indicated she would like to invoke confidentiality.

THE COURT: Yes. You may invoke that if you think that is appropriate.

Q. (BY [PROSECUTOR]) Let me reask the question.

Did you ever discuss with Mr. Cooper his relationship with these other women?

A. Yes, I have, sir.

Q. And, in fact, did you discuss with him his history of abuse and providing them drugs?

A. More his choice of females, sir.

Q. Okay. So—and did you discuss with him his long history of violence towards them?

A. Yes, sir, I did.

Q. Did he accept responsibility for that violence?

A. Yes, he did.

Q. And did he also tell you that he was involved in the sales of controlled substance as well as the use of controlled substance?

A. Again, we have this confidentiality, sir. I'm not sure—

Q. I'm referring to Mr. Cooper. I'm referring to only what Mr. Cooper told you. He has placed—

THE COURT: You may answer that question.

A. Okay. Yes, he did.

■ [¶ 8] Section 33–38–113 specifically applies to chemical dependency specialists who testify in criminal proceedings and provides:

(a) In judicial proceedings, whether civil, criminal, or juvenile, in administrative proceedings, and in proceedings preliminary and ancillary thereto, a patient or client, or his guardian or personal representative, may refuse to disclose and may prevent the disclosure of confidential information, including information contained in administrative records, communicated to a person licensed or otherwise authorized to practice under this act, and their agents, for the purpose of diagnosis, evaluation or treatment of any mental or emotional condition or disorder. *A person licensed or otherwise authorized to practice under this act shall not disclose any information communicated as described above in the absence of an express waiver of the privilege except in the following circumstances:*

(i) Where abuse or harmful neglect of children, the elderly or disabled or incompetent individuals is known or reasonably suspected;

(ii) Where the validity of a will of a former patient or client is contested;

(iii) Where such information is necessary to defend against a malpractice action brought by the patient or client;

(iv) Where an immediate threat of physical violence against a readily identifiable victim is disclosed to the person

licensed or otherwise authorized to practice under this act;

    (v) In the context of civil commitment proceedings, where an immediate threat of self-inflicted damage is disclosed to the person licensed or otherwise authorized to practice under this act;

    (vi) Where the patient or client alleges mental or emotional damages in civil litigation or otherwise places his mental or emotional state in issue in any judicial or administrative proceeding concerning child custody or visitation;

    (vii) Where the patient or client is examined pursuant to court order; or

    (viii) In the context of investigations and hearings brought by the patient or client and conducted by the board where violations of this act are at issue. Information that is deemed to be of sensitive nature shall be inspected by the board in camera and the board shall determine whether or not the information shall become a part of the record and subject to public disclosure.

(Emphasis added.) Neither party disputes that this statute is applicable to the instant case. None of the exceptions to the statute apply; therefore, we must determine whether Mr. Cooper expressly waived his privilege.

A privilege is a limitation on a court's ability to compel testimony regarding confidential communications that occur in certain relationships. 8 Wigmore, [*Evidence*] § 2285 at 527 [ (McNaughton rev. 1961) ]. Wigmore identifies four primary characteristics of a privileged communication. *Id.* According to Wigmore, for a statement to qualify as a privileged communication, it must originate in confidence; confidence must be essential to the continued vitality of the relationship; the relationship must be one society is prepared to recognize; and any injury to the relationship caused by the revelation of the confidential communication must be greater than any benefit that results from revealing the confidential communication. *Id.* *Curran v. Pasek*, 886 P.2d 272, 275 (Wyo. 1994). The policy underlying the statutory privilege at issue is to encourage full and frank disclosure between an individual and a person authorized to practice under Title 33, Chapter 38 for the purpose of effective diagnosis, evaluation, and treatment. Developments in the Law—Privileged Communications, 98 Harv. L. Rev. 1450, 1472–73 (1985). Similar privileges have been justified on the bases that (1) counseling relationships would suffer if people chose not to communicate essential information to professionals because they feared that the professionals would be compelled to disclose such information in court and (2) such relationships involve the professional and the individual in an intimate relationship in which personal information is communicated that should be protected from public disclosure. *Id.* at 1531. The Wyoming legislature codified this privilege, and our judicial system must act to protect its purpose.

[¶ 9] The state relies on *Frias v. State*, 722 P.2d 135 (Wyo.1986), wherein Mr. Frias appealed his second-degree murder conviction for the shooting death of his girlfriend. We held failure to object at trial to his physician's testimony constituted a waiver of his right to object. Mr. Frias' physician testified that, although he broke his arm in two places prior to the shooting, Mr. Frias could have held, operated, and fired a rifle using his injured arm. 722 P.2d at 140. The defense failed to object on the basis of the physician-patient privilege. *Id.* We cited the well established rule that the privilege must be claimed and the evidence objected to or the privilege is waived; therefore, we held his failure to object resulted in waiver. *Id.* Our holding in *Frias* is consistent with the general rule that "[o]ne may not rely on the admission of privileged communications as ground for reversal where the record on appeal does not show the making of an objection on a definite ground." 81 Am.Jur.2d *Witnesses* § 293 at 280 (1992). We based our decision in *Frias* upon a statute with similar language which required the patient's express consent before a physician could testify concerning confidential communications. 722 P.2d at 140. Throughout the trial, the defense opened the door by questioning witnesses as to Mr. Frias' physical condition and ability to handle and fire a rifle. *Id.* In this case, we must apply the clear language of a

different, though similar, statute and the particular circumstances which arose during the sentencing proceeding.

[¶10] This court interprets statutes by giving effect to the legislature's intent. *Worcester v. State*, 2001 WY 82, ¶13, 30 P.3d 47, ¶13 (Wyo.2001). We look first to the language of the statute to determine whether it is ambiguous. *Heinemann v. State*, 12 P.3d 692, 697 (Wyo.2000), *cert. denied*, 532 U.S. 934, 121 S.Ct. 1386, 149 L.Ed.2d 310 (2001). If we determine that the statute is unambiguous, we give effect to its plain meaning without invoking any rules of interpretation. *Id.*

[¶11] Section 33–38–113 permits a patient or client to prevent the disclosure of confidential information communicated to a person licensed or otherwise authorized to practice under the act for the purpose of diagnosis, evaluation, or treatment of any mental or emotional condition or disorder and further provides that a person licensed or otherwise authorized to practice under the act (professional counselors, marriage and family therapists, social workers, and chemical dependency specialists) *"shall not disclose any information communicated as described above in the absence of an express waiver of the privilege."* (Emphasis added.) The statute is unambiguous, and the legislative intent is clear. Unless an exception applies, a patient or client's express waiver is required before a person licensed or otherwise authorized to practice under the act may divulge privileged communications. When the statutory language is applied to this case, only Mr. Cooper's express waiver could operate to terminate the privilege protecting the confidential communications and permit the therapist to testify concerning such privileged communications.

[¶12] Waiver is defined as "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage.... The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." Black's Law Dictionary 1574 (7th ed. 1999). Express is defined as "[c]learly and unmistakably communicated; directly stated." *Id.* at 601. By contrast:

An implied waiver can be established by acts and conduct from which an intention to waive may reasonably be inferred, or where a person has pursued such a course of conduct as to evidence an intention to waive a right, by implication through a party's conduct inconsistent with an intent to assert a right.

28 Am.Jur.2d *Estoppel and Waiver* § 209 at 612 (2000). An implied waiver may occur if the holder fails to object when an attempt is made to inquire into matters protected by the privilege coupled with the subsequent disclosure of those privileged communications. 25 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5552 (1989).

[¶13] It is clear that Mr. Cooper impliedly waived his right to assert his statutory privilege when he failed to object to his therapist's testimony. However, his failure to object was not an express waiver that clearly and unmistakably conveyed his intent to relinquish his statutory right. Thus, it was error for the court to allow the therapist to disclose Mr. Cooper's privileged communications. At the moment the therapist queried the court as to whether she could reveal privileged communications, the court should have asked Mr. Cooper whether he desired to invoke the privilege or whether he wanted to make an express waiver. It was not the therapist's prerogative.

[¶14] The state contends Mr. Cooper waived his statutory privilege simply by calling his therapist to testify. However, the mere act of calling a witness bound by the privilege does not affect a waiver because the testimony can be confined to unprivileged matter. 2 *Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges* § 6.12.4c(4) (2002); *see also Regan v. Garfield Ridge Trust and Savings Bank*, 220 Ill.App.3d 1078, 163 Ill.Dec. 605, 581 N.E.2d 759, 768 (1991) (holding that, "if a client calls a former attorney to testify and that attorney reveals no privileged communications during direct examination, there is no waiver of the privilege"); *Cheyenne Construction, Inc. v. Hozz*, 102 Nev. 308, 720 P.2d 1224 (1986) (holding waiver of the attorney-client privi-

lege did not result when a client called his attorney to the witness stand because the attorney testified only to acts that did not concern private communications, and thus his testimony did not fall within the attorney-client privilege). Although the defense came close to opening the door to privileged communications during the therapist's direct examination by asking an open-ended question, merely calling the therapist as a witness is not sufficient to result in an express waiver of the statutory privilege.

[¶ 15] Having found error, we must determine whether the procedural error resulted in prejudice to Mr. Cooper and whether the circumstances manifested inherent unfairness and injustice or conduct which offends the public sense of fair play. *See Trusky*, 7 P.3d at 13. In light of Mr. Cooper's extensive criminal record coupled with the presentence investigation recommendation that Mr. Cooper be sentenced to the maximum penalty, the therapist's reference to sales of controlled substances likely did not have a substantial impact on the trial court's sentencing determination. The presentence investigation report detailed Mr. Cooper's numerous prior convictions, including more than twenty-five serious felony and misdemeanor convictions of which at least one was for possessing a controlled substance and one was for delivering a controlled substance. The report also recognized his propensity to reoffend even though the judicial system offered him several opportunities to receive treatment and change his behavior. Under these circumstances, we conclude the error was not prejudicial.

[¶ 16] Affirmed.