# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 65

APRIL TERM, A.D. 2017

June 2, 2017

IN THE MATTER OF THE
TERMINATION OF PARENTAL
RIGHTS TO:  GAC, A Minor Child.

KRYSTAL KAYLYNN CAVE,

Appellant
(Respondent),

v.                                                          S-16-0212

STATE OF WYOMING, DEPARTMENT
OF FAMILY SERVICES,

Appellee
(Petitioner).

*Appeal from the District Court of Natrona County*
The Honorable W. Thomas Sullins, Judge

*Representing Appellant:*
> Timothy C. Cotton of Cotton Legal, Casper, Wyoming.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Wendy S. Ross, Senior Assistant Attorney General; Jill Kucera, Senior Assistant Attorney General.  Argument by Ms. Ross.

*Guardian ad Litem:*
> Dan S. Wilde, Deputy State Public Defender; Aaron Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian ad Litem Program.  Argument by Mr. Hockman.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     A jury found that Appellee Department of Family Services (DFS) had proven two statutory grounds for termination of Appellant Krystal Kaylynn Cave's (Mother) parental rights to GAC (Child).  On appeal, Mother claims the district court erred by allowing: 1) the guardian ad litem (GAL) to actively participate in the termination proceedings; and 2) her counselors to testify at trial over her claim of privilege.

[¶2]     We affirm.

## ISSUES

[¶3]     The issues on appeal are:

1.     Did the district court err by allowing the GAL to fully participate in the termination proceedings?

2.     Did the district court err when it allowed Mother's mental health providers to testify at trial?

## FACTS

[¶4]     On May 20, 2013, the Child, who was two years old, was found wandering alone near a busy street in Casper, Wyoming.  He was very cold because he was wearing only a t-shirt and socks, with no diaper, underwear or pants.  The person who found the Child called law enforcement.  No responsible adult could be located, so the Child was taken into protective custody.

[¶5]     Mother arrived at the scene about forty minutes later.  She was frantic and demanded the officers return the Child to her.  She was told that, because he was already in protective custody, she would have to make arrangements with DFS for the Child's return.  DFS was concerned about the Child's living arrangements because a couple of months earlier, it had investigated a report that Mother and the Child were living in a storage unit.  At that time, DFS offered Mother help with locating housing and employment.  However, after a few meetings, Mother declined further assistance from DFS and the agency closed the case.

[¶6]     Given this history, DFS required Mother to demonstrate that she had a safe place for the Child to live before releasing him, but she refused to allow the investigator into the house where she said they were staying.  Mother also tested positive for methamphetamine use.  A neglect action was filed, and, after a shelter care hearing, the juvenile court ordered that the Child remain in DFS custody.

1

[¶7]   In July 2013, the parties stipulated to a consent decree in the juvenile case.[1]  Under the terms of the consent decree and the court order accepting it, the neglect action would be dismissed without adjudication if Mother completed the objectives of her DFS case plan.  Among other things, the case plan required Mother to participate in substance abuse and mental health counseling and to execute releases allowing DFS access to her counseling records.

[¶8]   Although Mother made some effort to locate suitable housing and employment and attended counseling, she did not fully comply with the case plan.  She continued to use methamphetamine and failed to complete the required drug testing.  Consequently, in January 2014, DFS moved to reinstate the proceedings and adjudicate Mother as having neglected the Child. The juvenile court granted the motion.  After the adjudication, DFS continued to make efforts to rehabilitate Mother with the goal of reunifying the family.  The agency provided various services to Mother, including substance abuse treatment and mental health counseling.  However, she did not make adequate progress to complete the case plan and, approximately six months later, the juvenile court changed the permanency plan from family reunification to adoption.

[¶9]   To implement the new permanency plan, DFS filed a petition in district court to terminate Mother's parental rights to the Child.[2]  The petition alleged that termination of Mother's parental rights was appropriate under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v) LexisNexis 2015), respectively, because: 1) Mother neglected the Child, DFS's reasonable efforts to rehabilitate the family were unsuccessful, and the Child's health and safety would be seriously jeopardized by returning him to Mother; and 2) the Child had been in foster care for at least fifteen of the most recent twenty-two months and Mother was unfit to have custody and control of the Child.  The court appointed the GAL to represent the Child and counsel to represent Mother.  Mother requested a jury trial on the termination action and filed a "Motion in Limine Excluding Guardian ad Litem's Active Participation in Termination of Parental Rights Trial and Exclusion of Evidence Not Relevant."  She claimed the GAL should not be allowed to actively participate in the termination proceeding because the Child was not a party and evidence pertaining to the best interests of the Child was not relevant at the trial.  The district court denied Mother's motion "without prejudice to the right of [Mother] to object to any irrelevant evidence proposed for introduction at the termination of parental rights trial."

[¶10]  DFS gave notice that it intended to call several of Mother's and the Child's mental health providers to testify as experts at trial.  Mother filed a motion to exclude that testimony, claiming DFS had failed to comply with W.R.C.P. 26(a)(2) which requires disclosure of certain information for witnesses designated to give expert testimony.  The

---

[1] Consent decrees are governed by Wyo. Stat. Ann. § 14-3-428 (LexisNexis 2015).

[2] The State also petitioned to terminate the Child's father's parental rights.  He did not respond and his rights were terminated by default.

district court denied the motion. A four day trial was held on November 30 through December 3, 2015. During the trial, the district court ruled that Mother's mental health providers could not testify because she had revoked earlier releases of information and invoked her privilege to keep that information confidential. The jury did not reach a verdict, and the district court declared a mistrial.

[¶11] In preparation for a second trial, DFS filed a motion to allow Mother's mental health providers to testify, and the GAL filed a memorandum of law which supported DFS's motion. Mother opposed the motion, once more claiming that her providers should not be allowed to testify because the information was privileged. The district court ruled that, after considering the matter further, there were several exceptions to the privilege which permitted Mother's mental health providers to testify at trial.

[¶12] At the conclusion of the second trial, the jury returned a verdict finding that DFS had proven both grounds to terminate Mother's parental rights to the Child. The district court entered an order terminating her rights, and she appealed.

## DISCUSSION

[¶13] Although Mother does not present an issue regarding the sufficiency of the evidence to terminate her parental rights, the procedural and evidentiary requirements for termination of parental rights play some role in resolving this case and bear repeating. The right to associate with one's family is fundamental and protected by due process. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599 (1982). In recognition of the fundamental liberty interest in family relationships, courts strictly scrutinize petitions to terminate parental rights and require proof of the basis for termination of parental rights by clear and convincing evidence. Clear and convincing evidence is "proof that would persuade a trier of fact that the truth of the contention is highly probable." *RGS v. State, Dep't of Family Servs.* (*In re KGS*), 2017 WY 2, ¶ 14, 386 P.3d 1144, 1147 (Wyo. 2017), citing *In re HLL*, 2016 WY 43, ¶ 39, 372 P.3d 185, 193 (Wyo. 2016).

### A. Guardian ad Litem's Participation in Proceedings to Terminate Parental Rights

[¶14] Mother claims the district court erred by allowing the GAL to actively participate in the termination proceedings. The role of a guardian ad litem is a question of law that requires review of the applicable statutes, administrative rules, and case law. Our review is, therefore, *de novo. Williams v. Sundstrom,* 2016 WY 122, ¶ 19, 385 P.3d 789, 794 (Wyo. 2016). *See also Glover v. State,* 860 P.2d 1169, 1173 (Wyo. 1993).

### 1. General Role of Guardian ad Litem in Termination Proceedings

[¶15] Wyo. Stat. Ann. § 14-2-312 (LexisNexis 2015) states in relevant part:

> After the petition [to terminate parental rights] has been filed, the court **shall** appoint a guardian ad litem to represent the child unless the court finds the interests of the child will be represented adequately by the petitioner or another party to the action and are not adverse to that party. . . . The Wyoming Rules of Civil Procedure, including the right of a parent, child or interested person to demand a jury trial, are applicable in actions brought under this act.

(emphasis added). We interpreted § 14-2-312 in *LM v. Laramie County Dep't of Family Servs. (In re MN),* 2007 WY 189, ¶ 6, 171 P.3d 1077, 1080-81 (Wyo. 2007):

> Wyo. Stat. Ann. § 14–2–312 is an unambiguous mandatory statute that does not allow the district court discretion not to appoint a guardian ad litem or not to make the appropriate record findings that no guardian *ad litem* is required. Furthermore, the requirement that mandatory statutes be obeyed is most compelling in cases such as this, where fundamental parent/child relationships are at risk of severance.

(citations omitted).

[¶16] Mother states that she is not challenging the appointment of the GAL. Instead, she questions the GAL's role. According to Mother, the Child was not a party to the termination proceeding but, rather, was in a position similar to a witness. She asserts, therefore, that "the GAL's role in termination cases is akin to any other counsel in a civil matter retained to advise someone regarding the issues and protect their interests when proper to do so – such as quash subpoenas and the like." DFS and the GAL counter that the GAL was not only entitled, but required, to participate fully in the proceedings.

[¶17] Mother argues that the Child was not a party to the termination of parental rights action because, under Wyo. Stat. Ann. § 14-2-310 (LexisNexis 2015), a child cannot be a petitioner. She also claims that the Child was not otherwise a party because he was not indispensable under W.R.C.P. 19, was not served with a summons, and was not required to answer the petition to terminate parental rights. Mother recognizes that § 14-2-312 gave the Child the right to request a jury trial and Wyo. Stat. Ann. § 14-2-313 (LexisNexis 2015) required service of the petition upon the GAL, but claims those statutes do not make the Child a party.

4

[¶18] We agree with the district court's ruling that the GAL was entitled to fully participate in the action to terminate Mother's parental rights. Regardless of whether the Child was technically a party to the action to terminate Mother's parental rights, he clearly had an interest and rights in the proceeding. We have said that a child has "as fundamental a right to familial association as . . . parents." *LM,* ¶ 7, 171 P.3d at 1081. This Court also recognizes that a child has an interest in divorce and child custody matters even though he is not a party. *See Waterbury v. Waterbury,* 2017 WY 11, ¶ 10, 388 P.3d 532, 535 (Wyo. 2017); *Weiss v. Weiss,* 2009 WY 124, ¶ 13, 217 P.3d 408, 412 (Wyo. 2009); *Donnelly v. Donnelly,* 2004 WY 72, 92 P.3d 298 (Wyo. 2004).

[¶19] The child's rights in a parental rights termination case are protected by appointment of a guardian ad litem. Section 14-2-312; *LM,* ¶¶ 6-7, 171 P.3d at 1080-81. Similarly, although there is no statutory requirement for appointment of a guardian ad litem in custody cases, courts frequently do so to protect the child's interests. *See, e.g., Clark v. Alexander,* 953 P.2d 145, 151 (Wyo. 1998); *Hanson v. Belveal,* 2012 WY 98, 280 P.3d 1186 (Wyo. 2012). We explained the duties of the guardian ad litem in *Moore v. Moore,* 809 P.2d 261 (Wyo. 1991) and *Clark, supra.* In *Moore,* 890 P.2d at 264, we stated that the guardian ad litem is "the attorney for the minor whom he is appointed to serve" and "participates in the proceedings as an advocate." We expanded upon the *Moore* ruling in *Clark* and explained that the guardian ad litem performs dual roles, by acting in the child's best interest and as an advocate in his favor. With regard to the guardian ad litem's participation in court proceedings, we stated:

> As counsel, the attorney/guardian ad litem has the opportunity and the obligation to conduct all necessary pretrial preparation and present all relevant information through the evidence offered at trial. Recommendations can be made to the court through closing argument based on the evidence received.

*Clark,* 953 P.2d at 154. *Clark,* therefore, states that the guardian ad litem should take an active part in all court proceedings.

[¶20] Mother attempts to distinguish *Clark* and *Moore* by emphasizing that they involved child custody, where the best interests of the child was the paramount issue; while, the best interests of the child are not relevant in determining the statutory bases for termination of parental rights. Her distinction between the two types of proceedings is valid. A typical conflict over which parent should have custody of a child focuses on the child's best interests. *See* Wyo. Stat. Ann. §§ 20-2-201 (initial custody determination) and 20-2-204(c) (LexisNexis 2015) (action to modify custody). *See also, Arnott v. Arnott,* 2012 WY 167, ¶ 18, 293 P.3d 440, 447-48 (Wyo. 2012). On the other hand, we stated in *BA v. Laramie County Dep't of Family Servs. (In re FM),* 2007 WY 128, ¶ 22, 163 P.3d 844, 850 (Wyo. 2007) that in termination proceedings,

the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence. *See Santosky.* The United States Supreme Court has said: "[w]e have little doubt that the Due Process Clause would be offended 'if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' " *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 555, 54 L.Ed.2d 511 (1978) (quoting *Smith v. Organization of Foster Families,* 431 U.S. 816, 862–863, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring in judgment)).

[¶21]  As we recognized in *BA,* termination of parental rights cannot be based soley upon the best interests of the child.[3]  However, that does not mean that the guardian ad litem cannot participate in the evidentiary portion of the trial.  The statutory provisions setting forth the requirements for termination of parental rights include factors directly related to the child's well-being.  In this case, those factors included: 1) a showing that the Child's health and safety would be seriously jeopardized by returning to Mother under § 14-2-309(a)(iii); and/or 2) a showing that Mother was unfit to have custody and control of the Child under § 14-2-309(a)(v).  It is hard to conceive how the GAL's duty to represent the Child as to those factors could be satisfied if the GAL's participation were curtailed in the manner urged by Mother.

[¶22] A guardian ad litem's dual duties have also been incorporated into the administrative rules applicable to cases involving child protection, children in need of supervision, and termination of parental rights cases. *Guardian Program Rules and Regulations* (GAL Rules) Chap. 1, § 2(a) (2013).  Like all administrative rules, the GAL Rules have the force and effect of law, so long as they are consistent with statute. *Seherr-Thoss v. Teton County Bd. of County Comm'rs,* 2014 WY 82, ¶ 14, n.2, 329 P.3d 936, 943 n.2 (Wyo. 2014); *Billings v. Wyo. Bd. of Outfitters & Guides,* 2001 WY 81, ¶ 24, 30 P.3d 557, 568-69 (Wyo. 2001).  The GAL Rules specifically recognize a guardian ad litem's dual role of zealously advocating in favor of the child while making sure the child's best interests are being protected. *Id.,* Chap. 1 § 4(a)(i)-(v), (c).  Under the rules,

---

[3] Section 14-2-309(a) does not mention the best interests of the child in setting out the requirements for termination of parental rights.  However, our case law indicates that the child's best interests are considered after at least one statutory ground for termination has been established. *See BA, supra.* Because this case focuses upon the court proceeding to determine the statutory grounds, we need not discuss whether the best interests of the child are properly considered after the grounds for termination have been established.

a guardian ad litem's "presence at and active participation in all hearings is absolutely critical." *Id., § 4(c).* That participation includes obligations to participate in all pre-trial and trial proceedings and to file pleadings, objections, etc. advocating "for the child's preferences and the child's bests interests." *GAL Rules,* Ch. 2, § 3(b)(viii) & (xvi). The administrative rules are consistent with the statutory and case law which required the GAL to actively participate on behalf of the Child in the proceeding to terminate Mother's parental rights.

[¶23] Mother's argument that the GAL's participation in the action to terminate her parental rights should have been limited to filing motions to "quash subpoenas and the like" is not supported by the applicable statutes, administrative rules, or case law. The district court did not err by refusing to restrict the GAL's participation in this case.

### 2. GAL's Performance in this Case

[¶24] In a somewhat obscure argument, Mother suggests that the GAL failed to properly fulfill her role when she did not inform the jury of the Child's wish to remain with Mother. Mother also claims the GAL improperly asked the jury to decide the case based upon the Child's best interests rather than the statutory factors. In *Clark,* we acknowledged the difficulty facing a guardian ad litem when the child's preference conflicts with his best interests. Acting as the attorney for the child, the guardian ad litem has an ethical duty to "'abide by a client's decisions concerning the objectives of representation.'" *Clark,* 953 P.2d at 152, quoting Wyo. R. Prof. Cond. 1.2. However, in the role of guardian ad litem, the attorney is obligated to act in the client's best interests. *Id.* We reconciled the two potentially adverse roles, as follows:

> Contrary to the ethical rules, the attorney/guardian ad litem is not bound by the client's expressed preferences, but by the client's best interests. If the attorney/guardian ad litem determines that the child's expressed preference is not in the best interests of the child, both the child's wishes and the basis for the attorney/guardian ad litem's disagreement must be presented to the court.

*Clark,* 953 P.2d at 153-54.

[¶25] Mother argues that the GAL violated her responsibilities by telling the jury she was recommending that Mother's parental rights be terminated without also informing the jury that the Child's preference was to be returned to her. We agree that the GAL could have presented the Child's preference more directly; however, she did present some evidence on the matter and the jury was very aware that he wanted to be with Mother. The record contains many references to the bond between Mother and the Child.

7

There was also evidence about the emotional problems the Child had while in foster care and how much he missed Mother.

[¶26] Although most of the evidence of the Child's preference to be with Mother was elicited during Mother's attorney's cross-examination of the witnesses, some of the evidence of the Child's preference was introduced by the GAL. Responding to the GAL's questions, DFS supervisor, Roberta Volk, described the difficulties the Child had being separated from Mother. Ms. Volk testified that the Child "loved his mom. That's never been a question in this case." Under the GAL's questioning, another DFS worker testified about the Child's struggles in foster care and that "he was dreaming that his mom was coming through the window to take him." Other witnesses testified, during cross-examination by the GAL, about the bond between Mother and the Child and the Child's problems in foster care. While the GAL could have been clearer about the Child's preference to be with Mother, she stated in her closing argument that the Child's struggles in foster care were due to "not being with his mom." The record, therefore, demonstrates that the GAL fulfilled her role of presenting the Child's preference to be returned to Mother to the jury.

[¶27] Mother also asserts that the GAL improperly concentrated her trial presentation upon the best interests of the Child rather than the statutory factors for termination of parental rights. She claims the GAL encouraged the jury to decide the case based upon the Child's best interests when she told them in closing argument that they should consider not only Mother's situation, but the Child's as well. Mother likens this case to *BA,* where we reversed the order terminating the mother's parental rights because DFS did not present clear and convincing evidence of the statutory grounds for termination of parental rights.

[¶28] In *BA,* the evidence at trial focused upon how well the child was doing in foster care with his aunt and demonstrated that his "continued placement" with the aunt was "in FM's best interest." *Id.,* ¶ 21, 163 P.3d at 850. We concluded the mother's right to due process of law was violated when her parental rights were terminated based upon evidence of the child's best interests rather than the statutory factors for termination of parental rights. *Id.,* ¶¶ 21-23, 163 P.3d at 850.

[¶29] It is true, as Mother insists, that the GAL argued to the jury that it should consider the Child's situation. While this argument could pertain to the Child's best interests, it also clearly referenced evidence relevant to determining the statutory factors for termination of parental rights. Under § 14-2-309(a)(iii), the jury needed to know what was required to keep the Child healthy and safe in order to determine if his health and safety would be seriously jeopardized if he were returned to Mother. Additionally, this Court has defined "fitness" in § 14-2-309(a)(v) as the parent's "ability to meet the ongoing physical, mental and emotional needs of the child." *RLA v. State, Dep't of Family Servs. (In re LA)*, 2009 WY 109, ¶ 14, 215 P.3d 266, 269 (Wyo. 2009). *See also,*

*RGS,* ¶ 16, 386 P.3d at 1147. The jury could not determine whether Mother was able to meet the Child's needs without knowing what they were. The trial evidence included testimony by the Child's medical and mental health providers about his specific needs and Mother's problems, including substance abuse and mental health issues, which would prevent her from addressing his needs and keeping him healthy and safe. Thus, the GAL's argument that the jury should consider the Child in making its determinations was not an improper argument based upon the Child's best interests.

[¶30] Furthermore, to dispel any possibility that the jury would misunderstand the GAL's argument, the district court expressly instructed the jury:

> The child's best interests is not an element of the claims to be decided by the jury in this case. The child's best interests come into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence.

This case, therefore, is nothing like *BA,* where the evidence focused solely on the child's best interests.

[¶31] Under our statutes, administrative rules and case law, the district court properly allowed the GAL to actively participate in the termination proceedings. Additionally, the GAL did not violate her duties or Mother's due process rights because she presented the Child's preference to the jury and did not improperly argue that it should decide the case based upon the Child's best interests.

## B. Treating Provider Testimony

[¶32] Mother maintains the district court erred by allowing her substance abuse and mental health providers to testify at trial. She claims their testimony should have been excluded on two bases: 1) DFS did not properly disclose it under W.R.C.P. 26; and 2) it was privileged information. Because Mother properly objected to the testimony, we review the district court's decision using the abuse of discretion standard. *CL v. ML,* 2015 WY 80, ¶ 15, 351 P.3d 272, 277 (Wyo. 2015).

> A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion.

*Wise v. Ludlow,* 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015), quoting *Glenn v. Union Pacific R.R. Co.,* 2011 WY 126, ¶ 12, 262 P.3d 177, 182 (Wyo. 2011). *See also CL*, ¶ 15, 351 P.3d at 277. To the extent resolution of this issue requires interpretation of statutes or court rules, our review is *de novo. Williams,* ¶ 19, 385 P.3d at 794; *Busch v. Horton Automatics, Inc.*, 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008) (stating *de novo* review applies to interpretation of statutes and rules of procedure).

### 1. Discovery Requirements

[¶33] The district court ordered the parties to "fully comply" with Rule 26(a)(2) "relative to the identification and disclosure of expert witnesses that are subject to the requirements thereof." Mother argues that the district court erred by allowing her mental health providers to testify as experts because DFS failed to provide the expert report and other materials mandated by Rule 26(a)(2)(B). Mother quotes an earlier version of the rule in her brief which did not include any subsections and pertained only to disclosure for witnesses "retained or specially employed to provide expert testimony." Rule 26(a)(2)(B) (2010). The 2014 version of Rule 26(a), which applied to this case, stated:

> (2) Disclosure of expert testimony.
>
> (A) . . . a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Wyoming Rules of Evidence.
>
> (B) (i) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness or disclosure signed by counsel for the party. The report or disclosure shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

10

(ii) Unless otherwise stipulated by the parties or ordered by the court, if the witness is expected to provide opinions but no report or disclosure under (B)(i) is required, a party must provide a summary of the facts or opinions to which the witness is expected to testify and disclose the subject matter on which the witness is expected to present evidence under Rules 702, 703 or 705 of the Wyoming Rules of Evidence.[4]

(footnote added).

[¶34]  Mother argues that she was entitled to the comprehensive expert report and other materials mandated by Rule 26(a)(2)(B)(i).  However, as the district court noted, that requirement did not apply to Mother's treating providers, as they were not specially retained or employed to provide expert testimony.  *See Tracy v. Tracy,* 2017 WY 17, ¶ 38, 388 P.3d 1257, 1265 (Wyo. 2017); *JN v. RFSG (In re HLG),* 2016 WY 35, ¶¶ 22-23, 368 P.3d 902, 907-08 (Wyo. 2016).  The district court properly denied Mother's motion to exclude the experts' testimony on that basis.

[¶35]  Mother does not make any argument regarding the part of Rule 26 that actually applies to her treating providers – subsection (B)(ii).  A party intending to call a treating provider as an expert witness is required to produce "a summary of the facts or opinions to which the witness is expected to testify and disclose the subject matter on which the witness is expected to present evidence under Rules 702, 703 or 705 of the Wyoming Rules of Evidence."  Rule 26(a)(2)(B)(ii) (2014); *JN,* ¶¶ 22-23, 368 P.3d at 907-08.  Given Mother does not argue that DFS failed to provide the information required under subsection (B)(ii), we will not address this issue.

### 2.  *Privilege*

[¶36]  Mother also argues that the district court erred by allowing her mental health providers to testify to privileged communications.  The district court excluded the mental health providers' testimony during the first trial because Mother had revoked her earlier authorizations for disclosure of confidential information.  Prior to the second trial, DFS filed a motion for a pretrial ruling on the issue and the GAL filed a memorandum in support of the motion.  DFS and the GAL argued that the information should not be excluded because: 1) it had already been disclosed pursuant to releases executed by Mother; and 2) the information fell within various statutory exceptions to the privilege. The district court ruled that the testimony would be allowed over Mother's objection because it fell within several exceptions to the privilege.

---

[4] Effective March 1, 2017, Rule 26 was amended and renumbered consistent with Fed. R. Civ. P. 26.

11

[¶37]  We have generally described a privilege as "'a limitation on a court's ability to compel testimony regarding confidential communications that occur in certain relationships.  8 Wigmore, [*Evidence* ] § 2285 at 527 [(McNaughton rev. 1961)].'" *Cooper v. State,* 2002 WY 78, ¶ 8, 46 P.3d 884, 888 (Wyo. 2002), quoting *Curran v. Pasek,* 886 P.2d 272, 275 (Wyo. 1994).  Wyo. Stat. Ann. § 33-38-113 (LexisNexis 2015) establishes a privilege for information communicated by a patient or client to professional counselors, marriage and family therapists, social workers, and chemical dependency specialists "for the purpose of diagnosis, evaluation or treatment of any mental or emotional condition or disorder."  Disclosure of the information is not allowed unless there is an "express waiver of the privilege" by the client or patient or an exception applies.  Section 33-38-113(a).

[¶38]  Although the district court did not discuss the impact of Mother's releases upon her claim of privilege, we will consider whether Mother expressly waived the privilege because we can affirm the district court on any basis appearing in the record.  *Leach v. State,* 2013 WY 139, ¶ 19, 312 P.3d 795, 799 (Wyo. 2013).  The trial evidence included certain documents from the juvenile case.  One of those was the juvenile court's order accepting the parties' stipulated consent decree which required Mother to comply with the DFS case plan.  The case plan identified Mother's mental health/coping skills, substance abuse, and parenting skills as safety and risk issues that needed to be addressed.  Under the terms of the case plan, Mother was required to "work with her individual counselor and substance abuse counselors" and to "sign forms to release/share information" from her counseling with DFS.  Mother signed the case plan.

[¶39]  The record contains a release signed by Mother.  It was an express waiver of the privilege because it "clearly and unmistakably conveyed [Mother's] intent to relinquish [her] statutory right" to the privilege by allowing the provider to release information to DFS.  *Cooper,* ¶ 13, 46 P.3d at 889.  Although the record contains only one of the releases signed by Mother, DFS represented to the district court that Mother had also executed releases for her other providers.  The providers' and DFS employees' testimony confirms that information consistent with the providers' trial testimony was shared with DFS and/or at MDT meetings pursuant to Mother's releases.

[¶40]  Mother, nevertheless, asserted that her later revocation of the releases prevented that information from being used at trial.  In *Trujillo v. State,* 880 P.2d 575, 581 (Wyo. 1994), we stated that a subsequent revocation of a release will not prevent testimony about information previously disclosed pursuant to that release.  *Trujillo* followed the general rule recited in 81 Am.Jur.2d *Witnesses* § 456 (2017):

> Once a patient consents to the release of medical information, he or she destroys the confidentiality between him or her and the doctor with regard to that information, and

the revocation of that consent does not reinstate the privilege with regard to information already disclosed.

[¶41]   The release signed by Mother included in the record incorporated this general rule into its express terms:

> [I] understand that I have the right to revoke this authorization at any time by notifying this office [in w]riting. I understand the revocation is only effective after it is received by this office.   [I] understand that any use or disclosure made prior to the revocation of this authorization will not [be a]ffected by the revocation.

Therefore, Mother was not entitled to reinstate the privilege for information that was previously disclosed pursuant to an "express waiver" of the privilege.  *See* § 33-38-113.

[¶42]   Furthermore, even without the express waivers, the evidence was admissible at trial.  Wyo. Stat. Ann. § 14-3-210 (LexisNexis 2015) states:

> (a) Evidence regarding a child in any judicial proceeding resulting from a report made pursuant to W.S. 14-3-201 through 14-3-215 shall not be excluded on the ground it constitutes a privileged communication:
>
> (i) Between husband and wife;
>
> (ii) Claimed under any provision of law other than W.S. 1-12-101(a)(i) and (ii); or
>
> (iii) Claimed pursuant to W.S. 1-12-116.

[¶43]   Wyo. Stat. Ann. § 14-3-205 (LexisNexis 2015) pertains to reports of negligence:

> (a) Any person who knows or has reasonable cause to believe or suspect that a child has been abused or neglected or who observes any child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, shall immediately report it to the child protective agency or local law enforcement agency or cause a report to be made.

[¶44] Mother claims there was no report of negligence in this case.   Instead, she characterizes the circumstances that led to the neglect charge as a simple report of a "lost

13

child." A citizen called law enforcement after finding the Child who was two years old, wandering alone near a busy street, wearing nothing but a T-shirt and socks, and very cold. Mother did not show up looking for the Child until forty minutes after law enforcement arrived. Under these circumstances, there was certainly reasonable cause to believe or suspect that the Child was being subjected to conditions or circumstances that would reasonably result in neglect.

[¶45] Another requirement for § 14-3-210 to apply is that the information disclosed by Mother's counselors be "regarding a child." We interpreted identical language from an earlier version of the statute in *CP v. Laramie County Dep't of Pub. Assistance and Social Servs.* (*In re: PP*)*,* 648 P.2d 512, 516-17 (Wyo. 1982), overruled on other grounds by *Clark,* 953 P.2d at 154, n.6. Like the case at bar, *PP* was a parental rights termination action resulting from the mother's neglect of the child. We ruled that the mother's psychologist and physician[5] could testify about communications with her because they were "regarding a child." We explained that "[e]vidence of [the child's physical, emotional and mental] condition and the cause thereof was inextricably bound up in the mental and physical state of [the mother]." *Id.* at 516-17.

[¶46] Here, DFS's Notice of Conclusions from its investigation was entered into evidence at the termination hearing and stated:

> The allegations of lack of supervision have been substantiated as to the preponderance of the evidence has been met [sic] due to interviews of involved parties and urinalysis testing of [Mother]. Further, [Mother] stipulated to the allegations of neglect on July 26, 2013, placing her under the jurisdiction of the court.

Mother's case plan indicated that the therapy was intended to address her substance abuse and mental health issues so the neglect would not be repeated in the future. Like in *CP,* Mother's physical and mental state was at the heart of the claim that she neglected the Child; consequently, it was clearly "evidence regarding a child." Section 14-3-210.

[¶47] Mother argues that § 14-3-210 was impliedly repealed by § 33-38-113 which, as we explained above, provides that communications with counselors and therapists are generally privileged, but also provides exceptions to the privilege.

> [O]ur longstanding rule is that repeals by implication are not favored and will not be indulged if there is any other reasonable construction. One asserting implied repeal bears

---

[5] The current version of § 14-3-210 does not create an exception to the privilege for communications between physician and patient under § 1-12-101(a)(i) or (ii). Section 14-3-210(a)(i).

14

the burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of affecting a repeal. Furthermore, it must be shown that the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject.

*Meyer v. Fanning (In re Est. of Meyer),* 2016 WY 6, ¶ 29, 367 P.3d 629, 638 (Wyo. 2016), quoting *Mathewson v. City of Cheyenne,* 2003 WY 10, ¶ 11, 61 P.3d 1229, 1233 (Wyo. 2003), which quoted *Shumway v. Worthey,* 2001 WY 130, ¶ 15, 37 P.3d 361, 367 (Wyo. 2001). We see no indication that the legislature intended to repeal § 14-3-210 when it enacted § 33-38-113. In fact, the two statutes are complementary. Section 33-38-113(a)(i) provides an exception to the privilege "[w]here abuse or harmful neglect of children, the elderly or disabled or incompetent individuals is known or reasonably suspected." This exception is entirely consistent with § 14-3-210.

[¶48] Finally, Mother claims that by allowing introduction of the evidence from her therapy, the policies underlying the privilege in § 33-38-113 were violated. In *Cooper,* ¶ 8, 46 P.3d at 888, we stated:

> The policy underlying the statutory privilege at issue is to encourage full and frank disclosure between an individual and a person authorized to practice under Title 33, Chapter 38 for the purpose of effective diagnosis, evaluation, and treatment. Developments in the Law—Privileged Communications, 98 Harv. L. Rev. 1450, 1472–73 (1985). Similar privileges have been justified on the bases that (1) counseling relationships would suffer if people chose not to communicate essential information to professionals because they feared that the professionals would be compelled to disclose such information in court and (2) such relationships involve the professional and the individual in an intimate relationship in which personal information is communicated that should be protected from public disclosure. *Id.* at 1531. The Wyoming legislature codified this privilege, and our judicial system must act to protect its purpose.

However, the statutory exceptions to the privilege recognize that other legitimate concerns sometimes take precedence over the confidentiality guaranteed by the privilege. It is up to the legislature, not this Court, to weigh the competing policies and decide when a claim of privilege should and should not be allowed. *See Cheyenne Newspapers, Inc. v.*

*Bd. of Trustees of Laramie County Sch. Dist. #1,* 2016 WY 113, ¶ 24, 348 P.3d 679, 685-86 (Wyo. 2016).

## CONCLUSION

[¶49] Pursuant to Wyoming statutes, administrative rules, and case law, the GAL was required to participate fully in the termination proceedings. The trial court, therefore, correctly denied Mother's motion to restrict the GAL's role. In addition, the GAL did not improperly attempt to persuade the jury to make its decision based upon the best interests of the Child, and the GAL properly presented the Child's preference to be with Mother to the jury.

[¶50] The district court correctly allowed Mother's mental health providers to testify about her communications with them. Because they were treating providers, DFS was not required to provide the full expert report and other materials required by Rule 26(a)(2)(B)(i) (2014). The testimony was also properly allowed over Mother's claim of privilege because the information had previously been disclosed pursuant to valid releases and was statutorily excepted from the privilege.

[¶51] Affirmed.